**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| PETER M. VAN ZANTEN and DWAIN E. VITTETOE, Individually and On Behalf Of All Others Similarly Situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No. |
| | ) | |
| vs. | ) | COMPLAINT |
| | ) | |
| KANSAS CITY LIFE INSURANCE COMPANY, | ) | Class Action |
| | ) | |
| Defendant. | ) | DEMAND FOR JURY TRIAL |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Peter M. van Zanten and Dwain E. Vittetoe ("Plaintiffs"), individually and on behalf of all others similarly situated, for their Class Action Complaint against Defendant Kansas City Life Insurance Company ("Defendant"), state and allege as follows:

## NATURE OF ACTION

1.      This is a class action for breach of contract and conversion to recover amounts that Defendant charged Plaintiffs and the proposed Class and Subclasses in excess of amounts authorized by the express terms of their life insurance policies. Plaintiffs' claims are supported by the written provisions of their life insurance policies (the "Policies"), which are materially the same as those of other policies held by the members of the proposed Class and Subclasses.

2.      The terms of Plaintiffs' Policies provide for an "accumulated value" consisting of monies held in trust by Defendant for Plaintiffs. The "accumulated value" is a cash value account maintained by Defendant for each Plaintiff and policy owner. Defendant is contractually bound to deduct from the cash value account only those charges that are explicitly identified and authorized by the Policies' terms.

1

3.      Despite unambiguous language in the Policies, which are fully integrated insurance agreements, Defendant repeatedly breached the Policies by deducting charges from Plaintiffs' cash value accounts in excess of the amounts specifically permitted by the Policies.

4.      Defendant has caused material harm to Plaintiffs and the proposed Class and Subclasses by improperly draining monies they have accumulated in the cash value accounts under their policies. Every unauthorized dollar taken from policy owners is one less dollar that can be used to: earn interest; pay future premiums; increase the death benefit; use as collateral for policy loans; or withdraw as cash.

5.      Plaintiffs bring this case as a class action under Federal Rule of Civil Procedure 23, individually and as representatives of the following Class:

> All persons who own or owned a Better Life Plan, Better Life Plan Qualified, LifeTrack, AGP, MGP, PGP, Chapter One, Classic, Rightrack (89), Performer (88), Performer (91), Prime Performer, Competitor (88), Competitor (91), Executive (88), Executive (91), Protector 50, LewerMax, Ultra 20 (93), Competitor II, Executive II, Performer II, or Ultra 20 (96) life insurance policy issued in Arizona, Colorado, Illinois, North Carolina, Pennsylvania, Texas, or Washington, that was issued or administered by Defendant, or its predecessors in interest.

6.      Plaintiff van Zanten also bring this case as a class action under Federal Rule of Civil Procedure 23, individually and as a representative of the following Conversion Subclass:

> All persons who owned or owned a Better Life Plan, Better Life Plan Qualified, LifeTrack, AGP, MGP, PGP, Chapter One, Classic, Rightrack (89), Performer (88), Performer (91), Prime Performer, Competitor (88), Competitor (91), Executive (88), Executive (91), Protector 50, LewerMax, Ultra 20 (93), Competitor II, Executive II, Performer II, or Ultra 20 (96) life insurance policy issued in Arizona, Colorado, North Carolina, Pennsylvania, Texas, or Washington, that was issued or administered by Defendant, or its predecessors in interest.

7.      Plaintiff van Zanten also bring this case as a class action under Federal Rule of Civil Procedure 23, individually and as a representative of the following Washington Subclass:

> All persons who owned or owned a Better Life Plan, Better Life Plan Qualified, LifeTrack, AGP, MGP, PGP, Chapter One, Classic, Rightrack (89), Performer (88), Performer (91),

2

Prime Performer, Competitor (88), Competitor (91), Executive (88), Executive (91), Protector 50, LewerMax, Ultra 20 (93), Competitor II, Executive II, Performer II, or Ultra 20 (96) life insurance policy issued in Washington, that was issued or administered by Defendant, or its predecessors in interest.

8.     Plaintiff Vittetoe also bring this case as a class action under Federal Rule of Civil

Procedure 23, individually and as a representative of the following Illinois Subclass:

All persons who owned or owned a Better Life Plan, Better Life Plan Qualified, LifeTrack, AGP, MGP, PGP, Chapter One, Classic, Rightrack (89), Performer (88), Performer (91), Prime Performer, Competitor (88), Competitor (91), Executive (88), Executive (91), Protector 50, LewerMax, Ultra 20 (93), Competitor II, Executive II, Performer II, or Ultra 20 (96) life insurance policy issued in Illinois, that was issued or administered by Defendant, or its predecessors in interest.

9.     Excluded from the Class and Subclasses is Defendant, any entity in which

Defendant has a controlling interest, any of the officers, directors, or employees of Defendant, the

legal representatives, heirs, successors, and assigns of Defendant, anyone employed with

Plaintiffs' counsel's firms, and any Judge to whom this case is assigned, and his or his immediate

family.

10.     This is not the first class-action lawsuit filed against Defendant on the same claims

and policy forms at issue. Indeed, five other courts have certified classes of owners of the same

policies. A class of Kansas owners of the same policies was certified in *Meek v. Kansas City Life*

*Insurance Co.*, No. 19-00472-CV-W-BP, which the Eighth Circuit Court of Appeals affirmed, 126

F. 4th 577 (8th Cir. 2025). A class of California owners of the same policies was certified in *Fine*

*v. Kansas City Life Insurance Co.*, No. 2:22-CV-02071 (C.D. Cal.). A class of Maryland owners of

the same policies was certified in *McMillan v. Kansas City Life Insurance Co.*, No. 1:22-cv-01100-

BAH. A class of Missouri owners of the same policies was certified in *Karr v. Kansas City Life*

*Insurance Co.*, 1916-CV26645 (Circuit Court of Jackson County, Mo.), which was also affirmed

on appeal, 702 S.W.3d 1 (Mo. Ct. App. Sept. 24, 2024), *reh'g and/or transfer denied* (Oct. 29,

2024), *transfer denied* (Dec. 23, 2024). Finally, a class of Missouri owners of Defendant's variable universal life insurance policies with the same policy language at issue here was certified in *Sheldon v. Kansas City Life Insurance Co.*, 1916-CV26689 (Circuit Court of Jackson County, Mo.).

11.     On behalf of themselves and the Class and respective Subclasses, Plaintiffs seek to recover compensatory and punitive damages.

## PARTIES

12.     Plaintiff Peter M. van Zanten resides in Olympia, Washington, and is a citizen of the State of Washington.

13.     Plaintiff Dwain E. Vittetoe resides in Kirksville, Missouri, and is a citizen of the State of Missouri.

14.     Defendant Kansas City Life Insurance Company is a corporation incorporated under the laws of the State of Missouri, with its principal place of business in Kansas City, Missouri.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1332(d)(2), because this is a class action in which at least one member of the class is a citizen of a state different from Defendant, the amount in controversy exceeds $5 million exclusive of interest and costs, and the proposed Class and Subclasses each contains more than 100 members.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and Local Rule 3.2(b)(1) in that the Defendant resides in this judicial district and division and a substantial portion of the events giving rise to Plaintiffs' causes of action occurred in this judicial district and division.

4

## FACTUAL BACKGROUND

17.     Plaintiff van Zanten purchased from Defendant a "Flexible Premium Adjustable Death Benefit Life Policy - Nonparticipating" which was issued to Plaintiff in Washington, bearing policy number 2609718, with an issue date of October 5, 1995, a policy date of September 10, 1995, and an initial specified amount of $75,000. Plaintiff van Zanten's Policy is Defendant's Executive (91) product. A true and accurate copy of Plaintiff van Zanten's Policy is attached hereto as Exhibit A and incorporated herein by reference.

18.     Plaintiff Vittetoe purchased from Defendant a "Flexible Premium Adjustable Death Benefit Life Policy – Nonparticipating" which was issued to Plaintiff in Illinois, bearing policy number 2388992, with an issue date of July 23, 1987, a policy date of July 1, 1987, and an initial specified amount of $50,000. Plaintiff Vittetoe's Policy is Defendant's PGP product. A true and accurate copy of Plaintiff Vittetoe's Policy is attached hereto as Exhibit B and incorporated by reference.

19.     Plaintiffs have always been both the "owner" and the "insured" under their respective Policies.

20.     Defendant is the effective and liable insurer of the Policies, and policies meeting the Class and Subclass definitions (the "Class Policies").

21.     The entire contract between each Plaintiff and Defendant consists of the Policy, the application, and any supplemental applications. Exs. A & B at 9.

22.     The terms of the Policies are not subject to individual negotiation and are materially the same for all policy owners.

23. Only the President, Vice President, Secretary, or Assistant Secretary of Defendant has authority to change a provision of the Policies, and any such "approved change must be endorsed on or attached to" the Policies. Exs. A & B at p. 13.

24. Insurance agents do not have "authority to make any changes or waive any of the terms" of the Policies. Exs. A & B at 13.

25. Defendant has issued and administered, and currently administers, all aspects of the Policies and Class Policies, including collecting premiums, and determining, assessing, and deducting policy charges.

26. Plaintiffs' Policies and the Class Policies are permanent life insurance, meaning their purpose is to provide insurance protection for the life of the insured.

27. In addition to a death benefit, the Policies and Class Policies provide policy owners an investment, savings, or interest-bearing component that accumulates value over time. Although the savings component in certain of the Class Policies may be identified by a different name, it is identified in the Policies and throughout this complaint as the "accumulated value" or cash value account.

28. Generally, under universal life insurance policies like those owned by Plaintiffs and class members, premiums are deposited into the cash value account of the policy, and the insurer deducts certain amounts directly from premium payments and monthly deductions from the cash value account as authorized by the policy.

29. The funds held in the cash value account are policy owner property that Defendant holds in trust for its policy owners. Policy owners have a right to the cash surrender value of the cash value account at any time. In addition, policy owners may make a partial withdrawal of any

6

portion of the cash value account upon demand of Defendant. In either event, Defendant is obligated to return the requested funds from the cash value account to the policy owners.

30. The Policies and Class Policies expressly identify how the cash value is calculated:

On each monthly anniversary day the accumulated value will be equal to:

A + B + C - D – E

On any day other than a monthly anniversary day, the accumulated value will be equal to:

A + B + C – D

"A" is the accumulated value on the preceding monthly anniversary day.

"B" is the net premiums received since the preceding monthly anniversary day.

"C" is interest on "A" from the preceding monthly anniversary day plus interest on each net premium in "B" from the date of receipt of each premium at [Defendant's] Home Office.

"D" is all partial withdrawals since the preceding monthly anniversary day and a pro rate portion of one month's interest to the date of calculation.

"E" is the monthly deduction, as described in Section 11.4, for the month beginning on that monthly anniversary day.

Exs. A & B at p. 13.

31. The Policies expressly define the specific charges that Defendant may assess and deduct from Plaintiffs' premium payments and the Policies' cash value account. Defendant may assess and deduct only those charges allowed by the Policies.

32. Plaintiff van Zanten's Policy authorizes Defendant to deduct 5% from each premium payment as a premium expense charge. Ex. A at p. 5. Plaintiff Vittetoe's Policy authorizes Defendant to deduct 2.5% from each premium payment as a premium expense charge. Ex. B at p. 5.

7

33.     The Policies authorize Defendant to take from the cash value account a "Monthly Deduction." The Monthly Deduction is:

> The amount [Defendant] deduct[s] on the monthly anniversary day from the accumulated value to pay the cost of insurance, expenses and the cost of any additional benefits provided by riders for the month beginning on that monthly anniversary day.

Ex. A at p. 8; Ex. B at p. 7.

34.     The Policies authorize Defendant to deduct a monthly expense charge in the amount of $5.00 per month for all policy years. Exs. A & B at p. 5.

35.     The Policies define "Expense Charges" as follows:

> The amount [Defendant] deduct[s] to cover [Defendant's] expenses. The premium expense charge is the amount [Defendant] deduct[s] from each premium payment. The monthly expense charge is included in the monthly deduction. These charges are shown on page 5.

Ex. A. at p. 8; Ex. B at p. 7.

36.     The premium expense charge and monthly expense charge are the only "expense charges" identified by the Policies.

37.     In addition to setting the maximum amounts Defendant is authorized to deduct for expense charges, the Policies expressly identify a separate cost of insurance charge deducted from the cash value account each month.

38.     The "Cost of Insurance" is defined in the Policies as:

> The charge [Defendant] make[s] for providing pure insurance protection using the current cost of insurance rates for this policy. It does not include the cost of any additional benefits provided by riders.

Ex. A at p. 8; Ex. B at 7.

39.     The Policies identify how the cost of insurance is calculated:

The cost of insurance on any monthly anniversary day is equal to:

$$Q \times (R - S)$$

8

"Q" is the cost of insurance rate (as described in Section 4).

"R" is the Insured's death benefit on that day divided by no less than 1.0036748.

"S" is the accumulated value (as described in Section 11.2) prior to subtracting the cost of insurance.

Ex. A at pp. 13-14; Ex. B at p. 13.

40.    The Policies disclose how the monthly cost of insurance rates ("Q" in the paragraph above) will be determined:

The monthly cost of insurance rates used in calculating the cost of insurance on each monthly anniversary day are based on the Insured's age, sex and risk class.

The cost of insurance rates used will be determined by us based on our expectations as to future mortality experience. Any change in the current cost of insurance rates will be on a uniform basis for Insureds of the same age, sex and risk class whose policies have been in force the same length of time. The current cost of insurance rates will never be increased to recover losses incurred, or decreased to distribute gains realized, by us prior to the change.

The cost of insurance rates used will not exceed those shown in the tables below. These rates are based on the 1980 Commissioners Standard Ordinary Smoker and Nonsmoker Mortality Table, age last birthday. The guaranteed maximum cost of insurance rates for special risk classes will be adjusted appropriately.

Ex. A at p. 6; *see also* Ex. B at p. 6.

41.    Age, sex, and risk class are factors commonly used within the life insurance industry to determine the mortality expectations of an insured or group or class of insureds. Indeed, Defendant acknowledges that age, sex, and risk class are mortality factors.

42.    In addition, "number of completed policy years" or "duration" appears as an explicit factor in some of the Class Policy forms. These are mortality factors that reflect the length of time since the insured was underwritten.

43.    Because the Policies specifically identify age, sex, and risk class (and in some instances "duration" or "number of completed policy years") in the cost of insurance provisions, and expressly state that the cost of insurance rates used will be determined based on Defendant's

9

expectations as to future mortality experience, the Policies do not authorize Defendant to consider non-mortality factors in setting monthly cost of insurance rates.

44. Like the Policies, the Class Policies disclose similar periodic deductions that Defendant is authorized to take from policy owners' cash value accounts, including specifically cost of insurance charges that are calculated using rates that Defendant promises will be determined based on its expectations as to future mortality experience and separate, monthly expense charges.

45. Although the Policies and Class Policies authorize Defendant to determine cost of insurance rates based on its "expectations as to future mortality experience," Defendant does not determine cost of insurance rates based on its "expectations as to future mortality experience." Defendant uses other undisclosed factors to determine such rates, including without limitation, its expectations as to future profit objectives and expenses.

46. By failing to determine cost of insurance rates based on its "expectations as to future mortality experience," Defendant knowingly causes those rates to be higher than what is explicitly authorized by the Policies and Class Policies. Defendant, thus, includes a margin-above-mortality in its cost of insurance rates, and thereby its monthly cost of insurance charges, that reflects an impermissible deduction from Plaintiffs' and the class members' cash value accounts.

47. By failing to determine cost of insurance rates based on its "expectations as to future mortality experience," Defendant repeatedly breaches the Policies and Class Policies by impermissibly inflating those rates such that they exceed Defendant's "expectations as to future mortality experience."

48.     The higher cost of insurance rates used by Defendant cause the monthly cost of insurance charges to be greater than what is explicitly authorized by the Policies and Class Policies. Consequently, Defendant withdraws from the cash value accounts amounts for the cost of insurance that are greater than those authorized under the Policies and the Class Policies.

49.     Each of Defendant's past and future cost of insurance deductions from the cash value accounts of Plaintiffs and the Class and Subclasses constitute separate breaches of contract.

50.     As a direct and proximate result of Defendant's breaches, Plaintiffs and the Class and Subclasses have been damaged, and those damages are continuing in nature in that Defendant has deducted and will continue to deduct cost of insurance charges from the cash value accounts of policy owners in unauthorized amounts.

51.     By loading cost of insurance rates with unlisted expense factors, Defendant repeatedly breaches the Policies and Class Policies by impermissibly deducting amounts from the cash value accounts of Plaintiffs and the Class and Subclasses in excess of the maximum expense charge amounts expressly authorized by the Policies and Class Policies.

52.     Defendant's inclusion of unlisted expense loads in the cost of insurance rates is not authorized under the expense provisions of the Policies and Class Policies. Indeed, Defendant charged policy owners the maximum amounts authorized under the Policies' and Class Policies' expense provisions, and therefore, did not have authorization to deduct additional expenses.

53.     Each of Defendant's deductions for expenses in excess of the maximum expense charge amounts constitutes separate breaches of contract.

54.     As a direct and proximate result of Defendant's breaches, therefore, Plaintiffs and the Class and Subclasses have been damaged and those damages are continuing in nature in that Defendant has deducted and will continue to deduct amounts for expenses from the accumulated

11

values of Plaintiffs and the Class and Subclasses in amounts not authorized by the Policies and Class Policies.

55.     Defendant regularly monitors its actual mortality experience and revises its expectations as to future mortality experience both to price new insurance products and to report its annual profits and expenses. Defendant's mortality expectations for the Policies and Class Policies have generally improved as individuals are living longer than Defendant expected when it determined the cost of insurance rates for the Policies and Class Policies. Nonetheless, Defendant has not lowered the cost of insurance rates for the Policies and Class Policies in over 40 years to reflect this improvement, which increases the impermissible profits Defendant collects through the cost of insurance charges, resulting in a windfall to Defendant. The "windfall profits" constitute a further breach of the Policies and Class Policies, which require Defendant to use its current expectations as to future mortality experience when determining the cost of insurance rates used to calculate each monthly deduction.

56.     As a direct and proximate result of Defendant's breaches, therefore, Plaintiffs and the Class and Subclasses have been damaged and those damages are continuing in nature in that Defendant has deducted and will continue to deduct cost of insurance charges from the cash value accounts of Plaintiffs and the Class and Subclasses in amounts not authorized by the Policies and Class Policies.

57.     Several courts have now found Defendant liable for breaching the same policies on the same claims. *See Meek v. Kansas City Life Ins. Co.*, 664 F. Supp. 3d 923 (W.D. Mo. 2023), *aff'd*, 126 F. 4th 577 (8th Cir. 2025) (Kansas owners of same policies); *Karr v. Kansas City Life Ins. Co.*, No. 1916-CV26645, 2022 WL 633903 (Mo. Cir. Ct. Feb. 22, 2022), *aff'd*, 702 S.W.3d 1 (Mo. Ct. App. Sept. 24, 2024), *reh'g and/or transfer denied* (Oct. 29, 2024), *transfer denied*

(Dec. 23, 2024) (Missouri owners of same policies); *Sheldon v. Kansas City Life Ins. Co.*, No. 1916-CV26689, 2023 WL 4423699 (Mo. Cir. Ct. June 27, 2023) (Missouri owners of variable universal life insurance policies issued by Defendant with same policy wording). In addition, two other courts have denied Defendant's motion to dismiss the same claims on the same policies, finding the plaintiff's interpretation at least reasonable, if not the only reasonable reading. *Fine v. Kansas City Life Ins. Co.*, 627 F. Supp. 3d 1153 (C.D. Cal. 2022) (California owners of same policies); *McMillan v. Kansas City Life Ins. Co.*, No. 1:22-cv-01100-BAH, 2023 WL 2499746 (D. Md. Mar. 14, 2023) (Maryland owners of same policies). Juries in *Meek*, *Karr*, and *Sheldon* found in favor of policyholders in trials on the damages caused by Defendant.

58.     Moreover, in June 2018, a Missouri jury returned a verdict under Missouri law in favor of a class of policyholders alleging nearly identical claims relating to inflated cost of insurance charges against State Farm Life Insurance Company, finding that the insurer had breached its policies and converted policyholder property by deducting unauthorized charges. In June 2020, the Eighth Circuit Court of Appeals affirmed the jury's verdict. Counsel for Defendant attended the oral argument before the panel of the Eighth Circuit in November 2019, suggesting that Defendant was aware of the jury verdict prior to such time. Despite its awareness of these rulings applied to nearly identical conduct, as well as the subsequent liability rulings against it, Defendant has not changed its practice of deducting unauthorized amounts from policyholders' accumulated values.

59.     Despite these rulings, Defendant continues to utilize cost of insurance rates based on impermissible factors, and intentionally and willfully overcharges its policy owners knowing its interpretation of the Policies and Class Policies has been repeatedly rejected.

60. Defendant knew it was not complying with the Policies and Class Policies well before these rulings confirming that fact. Defendant drafted the Policies and Class Policies and was aware that they contained a promise that the cost of insurance rates will be "based on [Defendant's] expectations as to future mortality experience" and certain other mortality-related factors, such as age, sex, risk class, and policy duration. Defendant was aware that it was required to comply with its contractual provisions, which is confirmed by various documents, including documents relating to its "Determination Procedures."

61. Defendant understood that its cost of insurance rates must be based on its expectations as to future mortality experience rather than other pricing assumptions and factors, such as investment margins, as is evidenced in documentation from Defendant's actuaries, including, specifically, correspondence from Defendant's actuary, Matthew Dolliver—relying on conversations with Dave Metzler—explicitly confirming that understanding in email. Defendant is aware that it does not determine its cost of insurance rates based on its expectations as to future mortality experience. Defendant is further aware that its cost of insurance rates exceed its expectations as to future mortality experience. And Defendant is aware that it deducted the cost of insurance every month using the cost of insurance rates that it inflated with non-mortality assumptions and factors. The cost of insurance rates and mortality expectations have been identified by Defendant.

62. Defendant is further aware that higher policy charges lead to lower accumulated values for policy owners, which in turn, increases the likelihood that a policy owner's policy will lapse absent increased premium payments.

63. In addition to the Policies and Class Policies themselves, Defendant referred to the cost of insurance charges as "mortality charges" in marketing materials and illustrations despite

its knowledge that it was passing on undisclosed non-mortality expenses and assumptions through the cost of insurance charges.

64. Defendant explicitly marketed the Policies and Class Policies as permanent products that "simply cannot become obsolete in your lifetime" with "low cost protection based on current mortality expectations." Defendant made similar representations to regulators; for instance, in 1986 Defendant told a regulator: "A repricing of this product would occur whenever our expectations as to future mortality experience would suggest that our current premiums are either inadequate or too high." Yet Defendant has not revised its rates for any product since 1987—more than 35 years ago.

65. In 1997, one state regulator explicitly requested that Defendant "[d]elete all factors such as persistency, interest, expenses, etc. from the Cost of Insurance provision, other than mortality cost. The Department will not allow these factors in the determination of the cost of insurance." Nevertheless, Defendant responded to that regulator by misleadingly suggesting that it was complying with that requirement.

66. Moreover, since at the latest 2008, Defendant has changed the wording in all policies it sells to eliminate the promise that cost of insurance rates "will be determined by us based on our expectations as to future mortality experience," as reflected in the policy language for the SuperNova, FlexWeath, and Life Protector products. This establishes that Defendant was aware that this phrase limited its authority to set cost of insurance rates under the Policies and Class Policies. In fact, this revision occurred for certain products by 2000, as seen with the Nova and Nova II products.

67. Since 2012 at the latest, Defendant's Senior Vice President and Chief Actuary, Mark Milton, has repeatedly inquired about which policies had the more permissive cost of

insurance rates language. And Dave Metzler, Marc Bensing, Lendy Kessler, Jill Daniel, and Lynn Robinson have been involved in similar conversations.

68.     Likewise, in early 2017 at the latest, Mark Milton attended the ReFocus Conference at which cost of insurance litigation was a major topic of discussion. In early 2017, Defendant undertook a project comparing its pricing assumptions (a set of expected mortality rates) for the relevant products to the recent mortality experience.

69.     Defendant also understood that the Policies and Class Policies were too complex for policyholders to fully understand how policy values are calculated. For instance, in one letter to regulators Defendant stated: "It goes without saying that the complexity of this product simply will not allow the reproduction of cash values by a policyowner without every item of detail regarding interest, expense charges, current cost of insurance rates, etc. This is a 'computer-age' product which is not 'cut and dried,' and demands an element of trust from our policyholder. . . . [I]t is our opinion that the mathematics of this product are actually too sophisticated for most buyers to comprehend . . . ."

70.     The nature of the Defendant's conduct is such that Plaintiffs and each member of the Class and Subclasses would be unaware that Defendant was engaging in wrongdoing by taking inflated charges and improper amounts from accumulated values. Defendant possesses the actuarial information and equations underlying the computation of rates and charges for the Policies and Class Policies. The cost of insurance rates used to calculate cost of insurance charges are not disclosed to policy owners, nor are the components or factors used to determine those rates. And, even if they were, Plaintiffs and the members of the Class and Subclasses would lack the knowledge, experience, or training to reasonably ascertain how Defendant calculated the rates and charges included in the Policies and Class Policies.

71.     Because of its superior knowledge of the aforementioned computations, Defendant was aware that Plaintiffs and each member of the Class and Subclasses did not know about the improper deductions. Defendant's superior knowledge and its position of trust in holding Plaintiffs' and the class members' funds for their benefit, and responsibility for determining the cost of insurance rates in compliance with the Policies' and Class Policies' terms, created a special relationship between Defendant and Plaintiffs and the class members and therefore a duty to disclose the material information that it was using factors not listed in the Policies and Class Policies to take larger cost of insurance deductions from policy owners' accumulated values than what would have been deducted had Defendant used the policy disclosed factors to determine the deductions. Defendant sent Plaintiffs and the class members annual statements that identified each month's cost of insurance charge while affirmatively and fraudulently concealing the factors Defendant considered and used to determine the cost of insurance rates and affirmatively and fraudulently misrepresenting the amount of the charges as taken in compliance with the Policies and Class Policies. Defendant's fraudulent concealment therefore tolls the statute of limitations, even if the claims asserted had otherwise accrued despite being undiscoverable.

72.     Plaintiffs did not discover, nor could they have discovered through reasonable diligence, the facts establishing Defendant's breaches or conversions or the harm caused thereby. Plaintiffs did not learn of Defendant's breaches until after they each had engaged counsel, who consulted an actuarial expert.

## CLASS ALLEGATIONS

73.     Pursuant to Federal Rules of Civil Procedure 23, Plaintiffs bring this action individually and as representatives of the following Class:

All persons who own or owned a Better Life Plan, Better Life Plan Qualified, LifeTrack, AGP, MGP, PGP, Chapter One, Classic, Rightrack (89), Performer (88),

Performer (91), Prime Performer, Competitor (88), Competitor (91), Executive (88), Executive (91), Protector 50, LewerMax, Ultra 20 (93), Competitor II, Executive II, Performer II, or Ultra 20 (96) life insurance policy issued in Arizona, Colorado, Illinois, North Carolina, Pennsylvania, Texas, or Washington, that was issued or administered by Defendant, or its predecessors in interest.

74.     Plaintiff van Zanten also bring this case as a class action under Federal Rule of Civil Procedure 23, individually and as a representative of the following Conversion Subclass:

All persons who owned or owned a Better Life Plan, Better Life Plan Qualified, LifeTrack, AGP, MGP, PGP, Chapter One, Classic, Rightrack (89), Performer (88), Performer (91), Prime Performer, Competitor (88), Competitor (91), Executive (88), Executive (91), Protector 50, LewerMax, Ultra 20 (93), Competitor II, Executive II, Performer II, or Ultra 20 (96) life insurance policy issued in Arizona, Colorado, North Carolina, Pennsylvania, Texas, or Washington, that was issued or administered by Defendant, or its predecessors in interest.

75.     Plaintiff van Zanten also bring this case as a class action under Federal Rule of Civil Procedure 23, individually and as a representative of the following Washington Subclass:

All persons who owned or owned a Better Life Plan, Better Life Plan Qualified, LifeTrack, AGP, MGP, PGP, Chapter One, Classic, Rightrack (89), Performer (88), Performer (91), Prime Performer, Competitor (88), Competitor (91), Executive (88), Executive (91), Protector 50, LewerMax, Ultra 20 (93), Competitor II, Executive II, Performer II, or Ultra 20 (96) life insurance policy issued in Washington, that was issued or administered by Defendant, or its predecessors in interest.

76.     Plaintiff Vittetoe also bring this case as a class action under Federal Rule of Civil Procedure 23, individually and as a representative of the following Illinois Subclass:

All persons who owned or owned a Better Life Plan, Better Life Plan Qualified, LifeTrack, AGP, MGP, PGP, Chapter One, Classic, Rightrack (89), Performer (88), Performer (91), Prime Performer, Competitor (88), Competitor (91), Executive (88), Executive (91), Protector 50, LewerMax, Ultra 20 (93), Competitor II, Executive II, Performer II, or Ultra 20 (96) life insurance policy issued in Illinois, that was issued or administered by Defendant, or its predecessors in interest.

77.     Excluded from the Class and Subclasses is Defendant, any entity in which Defendant has a controlling interest, any of the officers, directors, or employees of Defendant, the legal representatives, heirs, successors, and assigns of Defendant, anyone employed with

18

Plaintiffs' counsel's firms, and any Judge to whom this case is assigned, and his or his immediate family.

78.    The Class and Subclasses each satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action under Rule 23, as set forth more fully herein.

79.    The persons who fall within the Class and Subclasses number in at least the hundreds and most likely thousands, and thus the numerosity standard is satisfied. Because class members are geographically dispersed across the country, joinder of all class members in a single action is impracticable.

80.    Class members are readily ascertainable from information and records in Defendant's possession, custody, or control. Notice of this action can readily be provided to the Class and Subclasses.

81.    There are questions of fact and law common to the Class and Subclasses that predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair adjudication of the controversy. Indeed, the law in the class states is materially the same regarding the interpretation of standardized, consumer insurance contracts, such that Defendant's contractual obligations are the same regardless of the state in which it was issued. The questions of law and fact common to the Class and Subclasses arising from Defendant's actions include without limitation, the following:

a)  Whether Defendant is permitted by the Class Policies to determine cost of insurance rates that are not based on its expectations as to future mortality experience;

b)  Whether Defendant determines cost of insurance rates that are not based on its expectations as to future mortality experience;

19

c) Whether the Defendant is permitted by the Class Policies to consider and use undisclosed factors to determine the monthly cost of insurance rates used to calculate cost of insurance charges;

d) Whether Defendant considered, added, included, used, or relied on undisclosed factors to determine the monthly cost of insurance rates used to calculate cost of insurance charges;

e) Whether Defendant breached the terms of the Class Policies; and

f) Whether the Class and Subclasses sustained damages as a result of Defendant's breaches of contract.

65. In addition, whether Defendant converted class members' property is a common question to the Conversion Subclass.

66. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein.

67. Plaintiffs' claims are typical of the claims of the classes in that Plaintiffs and the class members all purchased policies containing the same or similar limitations on the amounts that Defendant could charge its policy owners under the express terms of the Policies and Class Policies.

68. Plaintiffs will fairly and adequately protect and represent the interests of the proposed classes, because their interests are aligned with, and not antagonistic to, those of the proposed classes, and they are represented by counsel who are experienced and competent in the

prosecution of class action litigation and have particular expertise with class action litigation on behalf of owners of universal life insurance policies.

69.     Maintenance of this action as a class action is a fair and efficient method for adjudicating this controversy. It would be impracticable and undesirable for each member of the class to bring a separate action. Because of the relatively small size of individual class members' claims, absent a class action, most class members would likely find the cost of litigating their claims prohibitively high and would have no effective remedy. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

<u>**COUNT I: BREACH OF CONTACT**</u>
**(Cost of Insurance Charge)**
**On Behalf of the Class and Subclasses**

70.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

71.     Plaintiffs and each class member purchased life insurance policies—the Policies and Class Policies—from the Defendant.

72.     The Policies and Class Policies are valid and enforceable contracts between the Defendant and Plaintiffs and class members.

73.     Plaintiffs and each class member substantially performed their obligations under the terms of the Policies and Class Policies.

74.     Defendant considers and uses unauthorized and undisclosed non-mortality factors to determine its monthly cost of insurance rates.

75.     Defendant does not determine cost of insurance rates based on its expectations as to future mortality experience.

76. Defendant impermissibly causes cost of insurance rates to be higher for the Policies and the Class Policies.

77. Because Defendant calculates cost of insurance charges using monthly cost of insurance rates that are higher than those authorized by the Policies and Class Policies, Defendant has deducted and will deduct cost of insurance charges from the accumulated values of Plaintiffs and the Class and Subclasses in amounts greater than those authorized by their policies.

78. Defendant's practice of deducting charges in amounts not authorized by the Policies and Class Policies results in repeated breaches of the Policies and Class Policies.

79. As a direct and proximate result of Defendant's breaches, Plaintiffs and the Class and Subclasses have sustained damages that are continuing in nature in an amount to be determined at trial.

### COUNT II: BREACH OF CONTACT
**(Expense Charges)**
**On Behalf of the Class and Subclasses**

80. The preceding paragraphs are incorporated by reference as if fully alleged herein.

81. By loading monthly cost of insurance rates with undisclosed expense factors, Defendant impermissibly deducts expense charges from the accumulated values of Plaintiffs and the Class and Subclasses in amounts in excess of the maximum expense charges expressly authorized by their policies.

82. By deducting unauthorized expense charges from the accumulated values of Plaintiffs and the Class and Subclasses, Defendant has breached and continues to breach the Policies and Class Policies.

83.     As a direct and proximate result of Defendant's breaches, Plaintiffs and the Class and Subclasses have sustained damages that are continuing in nature in an amount to be determined at trial.

<u>**COUNT III: BREACH OF CONTACT**</u>
**(Cost of Insurance Charge - Improving Expectations as to Future Mortality Experience)**
**On Behalf of the Class and Subclasses**

84.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

85.     The Policies and Class Policies require Defendant to determine cost of insurance rates based on its expectations as to future mortality experience.

86.     Although its mortality expectations have generally improved because people are living longer today than when the Policies and Class Policies were initially priced, Defendant has failed to reduce monthly cost of insurance rates for the Policies and Class Policies to reflect those improved mortality expectations.

87.     Defendant's failure to reduce these rates even though its expectations of future mortality experience improved constitutes breaches of the Policies and Class Policies.

88.     As a direct and proximate result of Defendant's breaches, Plaintiffs and the Class and Subclasses have sustained damages that are continuing in nature in an amount to be determined at trial.

<u>**COUNT IV: CONVERSION**</u>
**On Behalf of the Conversion Subclass**

89.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

90.     Plaintiffs and the class members have a property interest in the funds Defendant deducted from their cash value accounts in excess of the amounts permitted by the terms of the Policies and Class Policies.

91. By deducting cost of insurance charges and expense charges in unauthorized amounts from the cash value accounts of Plaintiffs and the class members, Defendant assumed and exercised ownership over, misappropriated or misapplied, and diverted for an improper purpose, specific funds placed in the custody of Defendant for a specified purpose to be applied consistently with the terms of the Policies and the Class Policies and held in trust for the benefit of Plaintiffs and the class members, without authorization or consent and in hostility to the rights of Plaintiffs and the class members.

92. Defendant had an independent duty not to appropriate the funds of Plaintiffs and the class members, a duty that exists regardless of and independently of Plaintiffs' and class members' life insurance contracts with Defendant. Defendant continues to retain these funds unlawfully without Plaintiffs' and the class members' consent.

93. Defendant's wrongful exercise of control over the personal property of Plaintiffs and the class members constitutes conversion.

94. As a direct and proximate result of Defendant's conduct, Plaintiffs and class members have been damaged, and these damages are continuing in nature.

95. Although requiring expert testimony, the amounts of unauthorized cost of insurance charges and expense charges Defendant took from Plaintiffs and the class members are capable of determination, to an identified sum, by comparing the actual cost of insurance charges each month to cost of insurance charges computed using monthly cost of insurance rates determined based on Defendant's expectations as to future mortality experience.

96. Defendant intended to cause damage to Plaintiffs and the class members by deducting more from their cash value accounts than was authorized by the Policies and Class Policies. Defendant's conduct was, therefore, malicious and Defendant is also guilty of

oppression in that its systematic acts of conversion subject Plaintiffs and the class members to cruel and unjust hardship in conscious disregard of their rights. Plaintiffs and the class members are therefore entitled to punitive or exemplary damages.

97.     Defendant has been subject to repeated lawsuits related to the allegations in this case. Numerous courts, including two appellate courts, have explicitly rejected—in final judgments—Defendant's position that the Policies and Class Policies permit its deductions. Nonetheless, Defendant has willfully, intentionally, and maliciously continued to hold the converted funds of the class members without legal justification. Furthermore, even more egregiously, Defendant has continued to convert funds from the class members despite these rulings. Defendant's continued engagement in this impermissible conduct is done intentionally and with conscious disregard for the rights of its policy owners.

98.     On behalf of himself and the Conversion Subclass, Plaintiff van Zanten seeks all damages proximately caused by Defendant's conduct as well as punitive or exemplary damages.

## PRAYER FOR RELIEF

WHEEFORE, Plaintiffs, individually and on behalf of all others similarly situated, request relief and judgment against Defendant as follows:

a)  That the Court enter an order certifying the Class and Subclasses, appointing Plaintiffs as representatives of the Class and their respective Subclasses, appointing Plaintiffs' counsel as Class Counsel, and directing that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the Class and Subclasses;

b)  For a judgment against Defendant for the causes of action alleged against it;

c)  For compensatory damages in an amount to be proven at trial;

d)  For punitive or exemplary damages;

25

e) For prejudgment and post-judgment interest at the maximum rate permitted by law;

f) For Plaintiffs' attorneys' fees;

g) For Plaintiffs' costs incurred; and

h) For such other relief in law or equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: February 12, 2025

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

_s/ Patrick J. Stueve_
Patrick J. Stueve, MO Bar # 37682
Bradley T. Wilders, MO Bar # 60444
Lindsay Todd Perkins, MO Bar # 60004
Ethan M. Lange, MO Bar # 67857
David A. Hickey, MO Bar # 62222
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:     816-714-7100
Facsimile:     816-714-7101
Email:          stueve@stuevesiegel.com
Email:          wilders@stuevesiegel.com
Email:          perkins@stuevesiegel.com
Email:          lange@stuevesiegel.com
Email:          hickey@stuevesiegel.com

- And -

John J. Schirger, MO Bar # 60583
Joseph M. Feierabend, MO Bar # 62563
**SCHIRGER FEIERABEND, LLC**
4520 Main Street, Suite 1570
Kansas City, Missouri 64111
Telephone:     816-561-6500
Facsimile:     816-561-6501
Email:          schirger@SFlawyers.com
Email:          feierabend@SFlawyers.com

_Attorneys for Plaintiffs_

26